```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

MELANIE LIDLE, et al.,              :

          Plaintiffs,               :   08 Civ. 1253 (BSJ)(HBP)

    -against-                       :
                                        OPINION AND
CIRRUS DESIGN CORPORATION,          :   ORDER
et al.,
                                    :
          Defendants.
                                    :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

Plaintiffs have made an application to strike the references to National Transportation Safety Board ("NTSB") findings and conclusions that defendant Cirrus Design Corporation ("Cirrus") made in its submissions in support of various pending motions (Letter from Hunter J. Shkolnik, Esq. to the undersigned, dated February 18, 2010 ("Pls.' Feb. 18 Letter") at 1; see Letter from Hunter J. Shkolnik, Esq. to the undersigned, dated February 12, 2010 ("Pls.' Feb. 12 Letter") at 2).[1]  For the reasons set forth below, plaintiffs' application is granted with regard to references to reports prepared by the NTSB itself and denied with

---

[1] The disputes resolved by this Order have been raised in a series of letters rather than by formal motion.

regard to any references Cirrus' briefs may contain to the factual reports of investigators.

II.  Background

This is a wrongful death action arising out of the deaths of former New York Yankees pitcher Cory Lidle and his flight instructor, Tyler Stanger.  On October 11, 2006, a Cirrus aircraft occupied by Lidle and Stanger flew northbound up the East River in a corridor of uncontrolled airspace.  Approximately one mile north of the Queensboro Bridge, the aircraft attempted to execute a 180-degree turn to reverse its course and to avoid the controlled airspace surrounding LaGuardia Airport.  The aircraft did not complete the turn successfully and crashed into an apartment building on East 72nd Street on Manhattan's Upper East Side, killing Lidle and Stanger.  The principal dispute in this litigation is whether the crash was due to a piloting error or to a malfunction of the aircraft's control system.

Cirrus has filed a motion for summary judgment (Docket Item 82) as well as various Daubert motions to strike expert testimony (Docket Items 62, 66, 70, 74 and 78).  Cirrus' briefs and other submissions in support of these motions refer to the "NTSB Blue Ribbon Report" and the "NTSB Aircraft Accident Brief" (see, e.g., Affidavit of Robert C. Winn in Support of Cirrus' Daubert Motion, attached to Pls.' Feb. 18 Letter ("Winn Aff.")

¶ 4(i)-(ii)).[2]  Cirrus' use of NTSB-related materials includes but is not limited to references to the NTSB's determinations regarding the probable cause of the accident (Pls.' Feb. 18 Letter at 2).  Plaintiffs request an order striking Cirrus' references to NTSB findings and conclusions (Pls.' Feb. 18 Letter at 1; see Pls.' Feb. 12 Letter at 2).

Cirrus stipulates to striking from pages 5-6 of its summary judgment brief a reference to the "NTSB Accident Brief" ("[a]ccording to the NTSB, the accident occurred because the pilots attempted to perform a 180-degree turn in an area that was not sufficiently wide and at too low an altitude") and to striking paragraphs 20 and 21(c)-(d) of its Statement of Undisputed Facts which also refer to the NTSB Accident Brief (Letter from Patrick E. Bradley, Esq. to the undersigned, dated February 19, 2010 ("Def.s' Feb. 19 Letter") at 1).  However, Cirrus continues to defend its other references to reports produced in conjunction with the NTSB investigation (Def.'s Feb. 19 Letter at 1-3).

III.  Analysis

Different types of reports are produced in the course of NTSB investigations.  First, investigators (NTSB investigators and/or independent investigation groups) produce a "public

---

[2] Winn's affidavit states that the "NTSB Blue Ribbon Report" is the NTSB public reference file containing information on the accident (Winn Aff. ¶ 4(i)).

docket" or "factual report" containing the facts observed in the course of their investigation.  About the NTSB: DATA & INFORMATION PRODUCTS, www.ntsb.gov/info/info.htm; Chiron Corp. v. Nat'l Transp. Safety Bd., 198 F.3d 935, 938-39 (D.C. Cir. 1999); see 49 C.F.R. § 831.4.  The Board itself then issues a document called an "accident report," "accident brief," or "probable cause report" setting forth its opinions and conclusions regarding the most likely cause of the accident.  49 C.F.R. § 831.4; Chiron Corp. v. Nat'l Transp. Safety Bd., supra, 198 F.3d at 939; About the NTSB: DATA & INFORMATION PRODUCTS, www.ntsb.gov/info/info.htm.

The use of written material produced in conjunction with NTSB investigations in civil actions is governed by 49 U.S.C. § 1154(b), which states:  "[n]o part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report."  49 C.F.R. § 835.2 clarifies this rule, distinguishing between factual reports detailing the facts found in the investigation and the final report containing the conclusions of the Board.  The regulation provides:

> Board accident report means the report containing the Board's determinations, including the probable cause of an accident . . . .  Pursuant to . . . 49 U.S.C. 1154(b) . . . no part of a Board accident report may be admitted as evidence or used in any suit or action for

4

> damages growing out of any matter mentioned in such reports.
>
> Factual accident report means the report containing the results of the investigator's investigation of the accident. The Board does not object to, and there is no statutory bar to, admission in litigation of factual accident reports.

49 C.F.R. § 835.2.  Thus, while the factual report of the investigators may be used in a civil damages proceeding, the report of the Board's conclusions may not be used in such a proceeding.  49 C.F.R. § 835.2; see also 49 U.S.C. § 1154(b); Chiron Corp. v. Nat'l Transp. Safety Bd., supra, 198 F.3d at 937, 940-41 (although "Congress has made it clear that NTSB reports, including probable cause determinations, are not admissible as evidence in a civil lawsuit," investigators' factual reports are not "'reports of the Board'" and thus may be used in civil litigation); In re Jacoby Airplane Crash Litig., No. 99-6073 (HAA), 2007 WL 2746833 at *10 (D.N.J. Sept 19, 2007) (characterizing 49 U.S.C. § 1154(b) as "a categorical bar to admission of reports issued by the Board"); In re Air Crash Near Peixoto De Azeveda, Brazil, 574 F. Supp. 2d 272, 278 (E.D.N.Y. 2008) (relying on the "plain language" of 49 U.S.C. § 1154(b) to prohibit any use by parties of contents of NTSB report, but taking judicial notice that the NTSB did issue a report).

    Cirrus appears to argue that it should be permitted to refer to the factual findings, as opposed to the ultimate conclusions, described in the final NTSB report (see Def.'s Feb. 19

5

Letter at 1). Some courts have permitted litigants to parse an NTSB report to use the factual findings, but not the probable cause findings, in the litigation, see Mullan v. Quickie Aircraft Corp., 797 F.2d 845, 848 (10th Cir. 1986); Am. Airlines, Inc. v. United States, 418 F.2d 180, 196 (5th Cir. 1969); Berquido v. E. Air Lines, Inc., 317 F.2d 628, 631-32 (3d Cir. 1963); Lobel v. Am. Airlines, 192 F.2d 217, 220 (2d Cir. 1951), even post-Chiron, see Dowe v. Nat'l R.R. Passenger Corp., No. 01 C 5808, 2004 WL 887410 at *6 (N.D. Ill. Apr. 26, 2004); Hurd v. United States, 134 F. Supp. 2d 745, 749-50 (D.S.C. 2001), aff'd, 34 Fed. App'x 77 (4th Cir. 2002). However, this interpretation is in direct conflict with 49 U.S.C. § 1154(b) and 49 C.F.R. § 835.2.[3] See Chiron Corp. v. Nat'l Transp. Safety Bd., supra, 198 F.3d at 941 ("No part of the Board's actual report is admissible as evidence in a civil suit."); In re Jacoby Airplane Crash Litig., supra, 2007 WL 2746833 at *10 ("The impropriety of attempting to dissect Board reports for factual statements while excising opinions and conclusions is too great."). By precluding any use of NTSB reports in litigation, 49 U.S.C. § 1154(b) "prevent[s] outside influence on a Board report . . . automatically eliminat[ing] any

---

[3]The court in Chiron found that some of these cases mischaracterized investigators' reports as reports of the Board. Chiron Corp. v. Nat'l Transp. Safety Bd., supra, 198 F.3d at 940. The court explained that these misinterpretations were the impetus for 49 C.F.R. § 835.2. Chiron Corp. v. Nat'l Transp. Safety Bd., supra, 198 F.3d at 940.

6

motive to influence the Board's reports."  In re Jacoby Airplane Crash Litig., supra, 2007 WL 2746833 at *10.

Cirrus also contends that it should be permitted to refer to NTSB findings in its Daubert motions because those motions do not use the information to support a position on a factual issue related to the merits of the case, but only to establish that plaintiffs' experts failed to consider all the information available to them in reaching their opinions (Def.'s Feb. 19 Letter at 2).  Cirrus claims that because these arguments pertain to the admissibility of evidence under Federal Rule of Evidence 702 rather than a factual determination, "the purpose of the statutory prohibition of the use of [NTSB findings] at trial -- to guard against the introduction of agency views that are within the province of the fact finder to resolve -- is not implicated" (Def.'s Feb. 19 Letter at 2).  However, the statute provides not only that NTSB reports may not be admitted into evidence, but also that such reports may not be "used in a civil action for damages" at all.  49 U.S.C. § 1154(b).

To the extent Cirrus' briefs contain references to factual information contained in investigators' report(s), such references are permissible.  However, because 49 U.S.C. § 1154(b) and 49 C.F.R. § 835.2 prohibit the use of any part of an NTSB

report in a civil action for damages, all references to or quotations from reports issued by the Board itself are stricken.[4]

Plaintiffs also suggest that Cirrus' "blatant disregard of the law" in referring to NTSB reports in their briefs justifies sanctions for the costs plaintiffs incurred in making their application (Pls.' Feb. 18 Letter at 3).  I decline to impose sanctions here.

IV.  Conclusion

Accordingly, for all the foregoing reasons, plaintiffs' application is granted with regard to references to and quotations from reports prepared by the NTSB itself and denied with regard to any references to or quotations from the factual

---

[4]Although an Order issued by the District Court for the District Court of Oregon granting plaintiffs' motion to strike references to and quotations from the NTSB probable cause determination (but not the factual incident report) in a related case is not, as plaintiffs suggest, controlling here, my conclusion is consistent with the Order of that Court (see Docket Entry 84 in Jones v. Cirrus, et al., 06-CV-1656, District of Oregon, attached to Pls.' Feb. 12 Letter).

reports of investigators.  Cirrus is to submit revised briefs that delete the stricken material within ten (10) days of the date of this Order.

Dated:   New York, New York
         April 22, 2010

                                        SO ORDERED

                                        _____
                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies transmitted to:

Hunter J. Shkolnik, Esq.
Rheingold, Valet, Rheingold,
     Shkolnik & McCartney LLP
113 East 37th Street
New York, New York 10016-3042

Patrick E. Bradley, Esq.
Tara E. Nicola, Esq.
Reed Smith LLP
Princeton Forrestal Village
Suite 250
136 Main Street
Princeton, New Jersey 08540-7839