UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
MELANIE LIDLE, personal representative   :
on behalf of the Estate of Cory Lidle;   :
MELANIE LIDLE, an individual;            :
CHRISTOPHER LIDLE, a minor, by and       :
through his guardian ad litem, JORDAN    :
FEAGAN; STEPHANIE STANGER,               :
an administrator on behalf of the        : 08 Cv. 1253 (BSJ)(HBP)
Estate of Tyler Stanger; STEPHANIE       :
STANGER, an individual; ASHLUND          :    **Opinion and Order**
STANGER, a minor by and through her      :
guardian ad litem, THAYNE STANGER;       :
                                         :
                                         :
                              Plaintiffs, :
                                         :
            v.                           :
                                         :
CIRRUS DESIGN CORPORATION, et al.        :
                                         :
                        Defendants.      :
------------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**


On February 22, 2007, Plaintiffs in the above-captioned

case ("Plaintiffs") filed wrongful death claims against Cirrus

Design Corporation ("Defendant") arising from an aircraft

accident that occurred on October 11, 2006 in New York, New

York.  Before the Court is Defendant's Motion for summary

judgment, filed on February 10, 2010.[1]  Defendant also move to

strike the expert opinions of Peter R. Leffe ("Leffe"), Abdon

Llorente ("Llorente"), Arthur C. Hughes ("Hughes"), Dr. Arun

Kumar ("Kumar"), and Stephen M. Lind ("Lind").  For the reasons

---

[1]    Defendants filed an Amended Motion for Summary Judgment on May 10,
2010.

stated below, Defendant's Motions for summary judgment and to exclude Plaintiffs' expert testimony are DENIED in their entirety.

## BACKGROUND

This is a wrongful death action arising out of the deaths of former New York Yankees pitcher Cory Lidle ("Lidle") and his flight instructor, Tyler Stanger ("Stanger"). On October 11, 2006, a Cirrus SR20 aircraft (the "Aircraft") occupied by Lidle and Stanger flew northbound up the East River in a corridor of uncontrolled airspace. (See Def.'s Rule 56.1 Stmt. ¶ 6; Pls.' Rule 56.1 Stmt. ¶ 6.) Approximately one mile north of the Queensboro Bridge, the Aircraft appeared to execute a 180 degree turn to reverse its course. (See Def.'s Rule 56.1 Stmt. ¶ 7; Pls.' Rule 56.1 Stmt. ¶ 7.) The Aircraft did not complete the turn successfully, and crashed into an apartment building on East 72nd Street on Manhattan's Upper East Side, killing Lidle and Stanger. (See Def.'s Rule 56.1 Stmt. ¶ 8; Pls.' Rule 56.1 Stmt. ¶ 8.)

On February 22, 2007, Plaintiffs filed a Complaint in the instant action in the Superior Court of California.[2] Plaintiffs allege (1) that the Aircraft's flight control system failed as a result of a design defect in the rudder-aileron interconnect

---

[2]    Defendant subsequently removed the above-captioned case to the United States District Court for the Central District of California, and it was transferred to the Southern District of New York on February 7, 2008.

2

(the "RAI"); (2) that the flight control system in the Aircraft was misrigged due to a manufacturing defect, causing the RAI to lock up and the pilots to lose control; (3) that the RAI system in the Aircraft was negligently designed; and (4) that Defendant failed to warn Lidle and Stanger of latent dangers resulting from foreseeable uses of the Aircraft.[3] Defendants now move for summary judgment on all counts.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing

---

[3]  The Amended Complaint included an additional count for breach of warranty. (See Am. Compl. 11.) However, Plaintiffs have since indicated that they will not proceed on that claim, (see Pl.'s Opp'n Summ. J. 71,) and I do not address it in this Order.

3

law will properly preclude the entry of summary judgment."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact
exists, a court must resolve all ambiguities and draw all
reasonable inferences against the moving party. Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587
(1986). "If, as to the issue on which summary judgment is
sought, there is any evidence in the record from any source from
which a reasonable inference could be drawn in favor of the
nonmoving party, summary judgment is improper." Chambers v. TRM
Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). However,
Plaintiffs may not "rely simply on conclusory allegations or
speculation to avoid summary judgment, but instead must offer
evidence to show that [their] version of the events is not
wholly fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir.
1999) (internal quotation omitted).

When deciding a motion for summary judgment, a federal
district court may consider only admissible evidence. See
Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53 (2d Cir. 1993);
see also Borgognone v. Trump Plaza, No. 98 Civ. 6139, 2000 WL
341135, at *2 (E.D.N.Y. Mar. 9, 2000) ("On a summary judgment
motion, a district court properly considers only evidence that
would be admissible at trial.") (internal quotation omitted).
Accordingly, the Court must evaluate evidence for admissibility

4

before it considers that evidence in ruling on a summary

judgment motion. See Fed. R. Evid. 104(a); Donnelly v. Ford

Motor Co., 80 F. Supp. 2d 45, 47-48 (E.D.N.Y. 1999). If a

proffer of expert testimony is excluded as inadmissible pursuant

to Rule 702, the court must make the summary judgment

determination on a record that does not include that evidence.

See Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

## DISCUSSION

### I.   Admissibility of Expert Testimony under Rule 702

Federal Rule of Civil Procedure 26 requires that parties

disclose the identity of a witness who is retained or employed

to provide expert testimony. More specifically, Rule 26

mandates that the disclosure include a written report prepared

and signed by the expert witness which contains:

> (i) a complete statement of all opinions the witness
> will express and the basis and reasons for them; (ii)
> the data or other information considered by the
> witness in forming them; (iii) any exhibits that will
> be used to summarize or support them; (iv) the
> witness's qualifications, including a list of all
> publications authored in the previous 10 years; (v) a
> list of all other cases in which, during the previous
> four years, the witness testified as an expert at
> trial or by deposition; and (vi) a statement of the
> compensation to be paid for the study and testimony in
> the case.

Fed. R. Civ. P. 26(a)(2)(B).

Before permitting a person to testify as an "expert" under

Rule 702, a district court must make the following

5

determinations: (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact. See Nimely v. City of New York, 414 F.3d 381, 396-97 (2d Cir. 2005).

"To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." United States v. Tin Yat Chin, 371 F.3d 31, 40 (2d Cir. 2004). In the Second Circuit, most courts "have liberally construed expert qualification requirements when determining whether a witness can be considered an expert." Robinson v. Sanctuary Record Groups, Ltd., 542 F. Supp. 2d 284, 289 (S.D.N.Y. 2008) (internal quotation omitted).

Based on this liberal qualification standard, a trial court "must consider the totality of a witness's background when evaluating the witness's qualifications to testify as an expert." Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009) (internal quotation omitted). An expert "should not be required to satisfy an overly narrow test of his own qualifications." Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp., No. 04 Civ. 7369, 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006) (internal quotation omitted). On the

contrary, "[i]n considering a witness's practical experience and
educational background as criteria for qualification, the only
matter the court should be concerned with is whether the
expert's knowledge of the subject is such that his opinion will
likely assist the trier of fact in arriving at the truth." Id.
(internal quotation omitted). Accordingly, "one may be an
expert solely based on one's practical experience
notwithstanding a lack of professional education or one's formal
education despite a lack of practical experience." Id.

If a witness is deemed qualified to testify as an expert,
the Court must determine whether the proffered testimony is
itself admissible. Federal Rule of Evidence 702 governs the
admissibility of expert testimony, and provides:

> If scientific, technical, or other specialized
> knowledge will assist the trier of fact to understand
> the evidence or to determine a fact in issue, a
> witness qualified as an expert by knowledge, skill,
> experience, training or education, may testify thereto
> in the form of an opinion or otherwise, if (1) the
> testimony is based upon sufficient facts or data, (2)
> the testimony is the product of reliable principles
> and methods, and (3) the witness has applied the
> principles reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has characterized the
admissibility standard under Rule 702 as imposing a two-fold
task of "ensuring that an expert's testimony both rests on a
reliable foundation and is relevant to the task at hand."
Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).

In applying this standard, "the district court functions as the gatekeeper for expert testimony." Raskin, 125 F.3d at 66.

In Daubert, the Supreme Court articulated four factors pertinent to determining the reliability of an expert's reasoning or methodology: (1) whether the theory or technique relied on has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation in the case of a particular scientific technique; and (4) whether the theory or method has been generally accepted by the scientific community. Daubert, 509 U.S. at 593-94. However, the Court noted that the Rule 702 admissibility inquiry is "a flexible one." Id. at 594. Thus, "the factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the case, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). For example, "[e]xpert engineering testimony may rest on scientific foundations or on the personal knowledge or experience of the engineer." Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 69-70 (S.D.N.Y. 2001); see also Donnelly, 80 F. Supp. 2d at 48 (noting that "in certain cases reliability concerns may focus more upon the expert's personal knowledge or experience than on the

8

Daubert factors"). Ultimately, "whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." Kumho Tire, 526 U.S. at 153 (citation omitted).

As the Second Circuit has found, however "there should be a presumption of admissibility of evidence." Borawick v. Shay, 68 F.3d 597, 610 (2d Cir. 1995); see In re Zyprexa Prods. Liab. Litig., 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (noting that "the assumption the court starts with is that a well qualified expert's testimony is admissible"); Fed. R. Evid. 702 advisory comm.'s note (observing that "a review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule"). Therefore, a trial judge should exclude expert testimony based on reliability concerns only "if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213-14 (2d Cir. 2009) (internal quotation omitted). "Other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." Id.; see also Raskin, 125 F.3d at 66 (noting that "disputes as to the validity of the underlying data go to the

9

weight of the evidence, and are for the fact-finder to resolve"
(internal quotation omitted)).

The final part of a trial court's gatekeeping task is to
determine whether an expert's testimony is "relevant to the task
at hand"; namely, whether the expert's reasoning or methodology
can be properly applied to the facts before the court. Daubert,
509 U.S. at 592-93; see Stagl v. Delta Air Lines, Inc., 117 F.3d
76, 81 (2d Cir. 1997). As stated in the Federal Rules of
Evidence, evidence is relevant if it has "any tendency to make
the existence of any fact that is of consequence to the
determination of the action more probable or less probable than
it would be without the evidence." Fed. R. Evid. 401. The
Daubert court described this consideration as one of "fit,"
requiring a "valid scientific connection" between the subject
matter of the expert's testimony and the factual issues to be
determined by the jury. Daubert, 509 U.S. at 591-92.

In order to be relevant, "[e]xpert testimony should not
merely reiterate arguments based on inferences that can be drawn
by laypersons; those can properly be advanced by the parties in
their summations." In re Zyprexa, 489 F. Supp. 2d at 283.
Neither should it comprise conclusory testimony that "undertakes
to tell the jury what result to reach [or] attempts to
substitute the expert's judgment for the jury's." Id.; see also
United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994) ("In

10

evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony which states a legal conclusion."). Rather, expert testimony is relevant if it is "likely to substantially assist the average person in understanding the case—even if it simply explains facts and evidence already in the record." In re Zyprexa, 489 F. Supp. 2d at 283.

A.  Hughes's Testimony is Admissible as Expert Opinion

Plaintiffs seek to offer the testimony of Hughes as an expert witness on aerodynamics and aeronautical engineering. Plaintiff states that Hughes will testify as to the standard of care in the aviation industry, whether Defendant's conduct with regard to the Aircraft breached this standard of care, and, if so, whether the breach caused or contributed to Lidle and Stanger's accident. (See Pls.' Opp'n Mot. Strike Hughes 1.)

Defendant, in turn, seeks to exclude Hughes's testimony on the grounds that (1) Hughes's expert report does not comply with the requirements of Rule 26; (2) Hughes is not qualified to offer expert opinions in this case; (3) Hughes's opinion that the Aircraft's flight control system was improperly designed and tested is unreliable; (4) Hughes's opinion that a failure of the flight control system caused the accident is unreliable and speculative; and (5) Hughes's opinion that had Service Bulletin

11

2x-24-17 (the "Service Bulletin") been issued more promptly the Aircraft's accident would not have occurred is unreliable.

As a preliminary matter, the Court finds that Hughes's report complies with the requirements of Rule 26. Hughes's report adequately sets forth his opinions, states the reasons for his opinions, and the data and other information he relied upon in forming his opinions. Accordingly, his testimony may not be excluded on these grounds.

Moreover, Hughes is qualified to offer an expert opinion in this case. Hughes's curriculum vitae ("C.V."), expert report, and deposition testimony reveal that he has sufficient "knowledge, skill, experience, training, or education" to testify as an expert on aeronautical engineering in the present case. See Fed. R. Evid. 702. Hughes received a bachelor's degree in general engineering and has more than 50 years of experience in aeronautical engineering, including 30 years at Lockheed Martin as an aerodynamist. Defendant argues that Hughes is unqualified because of his alleged "lack of experience in the design of the flight control system of general aviation aircraft." (Def.'s Mot. Strike Hughes 22.) However, as Plaintiff notes, this goes to the weight rather than the admissibility of Hughes's testimony.

The Court further finds that Hughes's testimony is both reliable and relevant. Defendant argues that Hughes's opinions

12

are speculative and unreliable because (1) he based his opinions
on inadequate information; (2) his testimony does not comply
with the four factors set forth in Daubert; and (3) Hughes did
not test his theory of causation. The Court addresses each of
these contentions in turn.

The Court finds that Hughes bases his testimony on adequate
information. First, Hughes's reliance on eyewitness testimony
is indisputably proper. Likewise, the information he gleaned
from visual inspection of the Aircraft wreckage may be relied
upon in his opinion. In fact, as Magistrate Judge Pitman noted
in an earlier ruling in this case:

> Defendants' reports are limited to the same issues as
> plaintiffs' reports and, with one exception, are based
> on the same methodology, namely the visual inspection
> of the wreckage in light of the experts' specialized
> knowledge and experience. For the most part, both
> sides' experts simply viewed the wreckage, made
> deductions based on the location and nature of the
> scrapes, bends and deformations and explained their
> reasons for reaching those deductions. The one
> exception is the finite element analysis ESI performed
> concerning the twisting of the control columns.

(Order Dec. 18, 2009 11.)

Second, the Court finds that the Daubert factors are
inapplicable to Hughes's proposed testimony. As Plaintiffs
correctly point out, "the Daubert factors 'do not all
necessarily apply even in every instance in which reliability of
scientific testimony is challenged,' and in many cases, the
reliability inquiry may instead 'focus upon personal knowledge

13

and experience' of the expert." Bah v. Nordson Corp., 00 Civ. 9060, 2005 WL 1813023, at *7 (S.D.N.Y. Aug. 1, 2005) (quoting Kumho Tire, 527 U.S. at 150); (see Pls.' Opp'n Mot. Strike Hughes 40-41.) In fact, "[a]n expert may base his opinion on experience alone, and [Defendant's] arguments implicate the weight of the evidence, rather than its admissibility." Figueroa v. Boston Scientific Corp., 254 F. Supp. 2d 361, 368 (S.D.N.Y. 2003). In the instant matter, as in Figueroa, Hughes "has extensive experience, education, and knowledge in the . . . engineering field and also reviewed relevant literature." Id. Moreover, "while his opinion may not be grounded in a plethora of hard facts, data, studies, and scientific literature, it is certainly neither novel scientific evidence, nor approaching the outer boundaries of traditional scientific and technological knowledge." Id. Therefore, any doubts as to Hughes's testimony may be resolved through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[, which] are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

Finally, the Court finds that Hughes's failure to test his theory is not fatal. As Judge Pitman observed, the expert opinions offered by Defendant are also largely based on visual inspection rather than extensive scientific testing. Moreover,

14

as Plaintiffs point out, "although [the expert] did not test his theory experimentally, his theory is capable of being tested, so that [Defendant's] experts could employ testing to undercut it and, indeed, have engaged in such efforts." Travelers Prop. & Cas. Corp. v. Gen. Elec. Co., 150 F. Supp. 2d 360, 366 (D. Conn. 2001); (see Pls.' Opp'n Mot. Strike Hughes 50-51;) see also Lesser ex rel. Lesser v. Camp Wildwood, 282 F. Supp. 2d 139, 144 (S.D.N.Y. 2003) ("As explained in the Advisory Committee Notes to amended Rule 702, the Daubert factor relating to 'whether the expert's technique or theory can be tested' means 'whether the expert's theory can be challenged in some objective sense, or whether it instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability.' [The expert's] report makes clear the evidence he is relying on to form his conclusions. It is clearly possible to test those conclusions objectively.")

Accordingly, the Court finds Hughes's expert opinion admissible, and DENIES Defendant's motion to strike his testimony.

### B. Kumar's Testimony is Admissible As Expert Opinion

Plaintiffs seek to offer Kumar's testimony as an expert witness on metallurgy and material engineering. Plaintiffs state that that Kumar will testify that certain markings and indentations on the flight control components show evidence of

pre-impact failure and attempts by the pilots to free the
controls.   (See Pls.' Opp'n Strike Kumar 1.)

Defendant, in turn, seeks to exclude Kumar's testimony.
Specifically, Defendant argues that Kumar's opinion that the
flight control system "probably jammed" in flight is
speculative, that the methodology Kumar used in reaching this
conclusion is unreliable, and that Kumar's opinion relating to
composite structures is irrelevant and unsupported.   The Court
disagrees.

The Court finds that Kumar's opinion that a jam occurred
somewhere in the flight control system is not speculative and
that his methodology was sufficiently reliable.   Kumar states
that, in addition to visual observation of the Aircraft
wreckage, he performed an x-ray analysis on a bent trim
cartridge actuator and the actuator bell crank hearing, he
performed an electron microscope analysis of the rod to
determine the fracture mode and failure direction, and he
dissembled the rod and analyzed component parts within the rod.
(See Kumar Aff. ¶¶ 15-17, 19.)[4]   While Defendants may not agree

---

[4]   The Court has carefully considered the arguments raised by Defendant in
its additional Motions to Strike the affidavits of all of Plaintiffs'
experts submitted by Plaintiffs in opposition to summary judgment.   To
the extent that the Court relies upon those expert affidavits in this
Order, the Court finds Defendant's arguments unpersuasive.   Courts in
this district have held that where an expert affidavit "expound[ed] a
wholly new and complex approach," as opposed to "merely support[ing] an
initial position," the expert's affidavit should be stricken.   See
Point Productions A.G. v. Sony Music Entm't, Inc., No. 93 Civ 4001,
2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004).   However, where an

16

with the conclusions that Kumar drew from these analyses, it is impossible to find that he did not sufficiently investigate the relevant materials.  With respect to Defendant's concern about the testing involved in reaching these conclusions, the Court agrees with Plaintiffs that "[t]o the extent [the expert] could have bolstered his conclusions through conducting experiments, that goes to the weight the jury should give the evidence, not its admissibility."  Robinson v. Garlock Equip. Co., No. 05 Civ. 6553, 2009 WL 104197, at *4 (W.D.N.Y. Jan. 14, 2009); (see Pls.' Opp'n Strike Kumar 10.)  Defendant may certainly raise any alleged failure to test in cross-examination, but the Court will not exclude Kumar's testimony on that basis.  See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002) (noting that "our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony").

Finally, Kumar's opinion relating to composite structures is neither irrelevant nor unsupported.  Kumar states in his affidavit that "[he] did not need to test the stiffness [of the composite spar structures] or the ability to bend/twist the spare on an entire length because if [he] was able to deform the spar on a smaller section, [he] . . . would be able to do that on a larger section due to the relative motion in between the

---

expert's affidavit provides evidentiary details for an opinion expressed in his expert report, those portions of his or her affidavit can be considered.  Id.

end of the trim cartridge and the pulley. This is a basic
scientific engineering opinion." (Kumar Aff. ¶ 22.) An expert
is entitled to rely on his experience and knowledge in forming
his or her opinions, and the Court finds no reason to preclude
Kumar from testifying as to his conclusions.

Accordingly, the Court finds Kumar's expert opinion
admissible, and DENIES Defendant's motion to strike his
testimony.

C. Leffe's Testimony is Admissible As Expert Opinion

Plaintiffs seek to offer Leffe's testimony as an expert
witness in the field of mechanical engineering and aviation
accident investigation and reconstruction. Specifically,
Plaintiffs state that Leffe will testify (1) that the Aircraft's
RAI became jammed during Lidle and Stanger's flight; (2) that a
Cirrus SR-20 does not need full cross-control input in order for
the RAI to jam or lock up; and (3) that the Cirrus' flight
control system was poorly designed.

Defendant moves to exclude Leffe's testimony, arguing that
(1) Leffe's expert report does not comply with the requirements
of Rule 26; (2) Leffe is not qualified to offer expert opinions
in this case; (3) Leffe's opinions that an RAI lockup caused the
accident, that an aircraft does not need to be fully cross-
controlled to cause an RAI lockup, and regarding the design of
the flight control system are unreliable; and (4) Leffe's

18

methodology is unreliable and his analysis of the physical evidence flawed.

For substantially the same reasons explained above in relation to Hughes and Kumar, the Court finds (1) that Leffe's report complies with Rule 26; (2) that Leffe is sufficiently qualified to testify as an expert in this case; and (3) that Leffe's methodology, his analysis of the physical evidence, his opinion that an RAI lockup caused the accident, and his opinion regarding the design of the flight control system are sufficiently reliable to admit his opinion in this case.

The Court further finds that Leffe's opinion that an aircraft does not need to be fully cross-controlled to cause an RAI lockup is not speculative. In forming this opinion, Leffe relies on several sources, including the deposition testimony of Bridgette Doremire, emails authored by Bruce Borden, and photographs of other Cirrus airplanes evidencing lockup. (See Leffe Rpt.) While Defendant may not agree with the conclusions Leffe draws from these sources, and while Defendant may even seek to preclude this evidence from admission at trial via motions in limine, Leffe is entitled to rely upon them in forming his opinions.

Accordingly, Defendant's Motion to Strike Leffe's opinion is DENIED.

D.   Lind's Testimony is Admissible As Expert Opinion

19

Plaintiffs seek to offer Lind's testimony as a piloting expert. Specifically, Plaintiffs state that Leffe will testify as to (1) the stall characteristics of the Aircraft; (2) the maneuverability of the Aircraft; and (3) the Aircraft's ability to perform a 180 degree left reversal turn over the East River. (See Pls.' Opp'n Mot. Strike Lind 1.)

Defendant moves to strike Lind's testimony, arguing that (1) Lind's opinions are irrelevant to the case and (2) Lind did not follow any discernable methodology. The Court disagrees.

First, it is clear that Lind's opinions are relevant to the case. Defendant has theorized that Lidle and Stanger began their 180-degree turn while already 400 feet to the west of the east bank of the river, and then realized too late into the turn that the bank angle of the plane was not steep enough to complete the turn while remaining over water. (See Def.'s Mot. Summ. J. 6.) Lind, by contrast, believes that Lidle and Stanger would only have hit the building on East 72nd Street if they had meant to do so or if they were experiencing problems with their flight control system. (See Lind Rpt. 7.) Lind's opinion that the Aircraft accident was not due to pilot error is clearly relevant to Plaintiff's case, and Defendant's Motion to strike on the basis of relevance must be denied.

The Court also finds that Lind's methodology is sufficiently reliable to admit his opinions in this case. As

Plaintiffs note, there is no way to determine the exact bank angle of the Aircraft on the date of the incident. (See Pls.' Opp'n Mot. Strike Lind 10.) Therefore, both sides have used radar data, eyewitness statements, and test flights to recreate their version of events. Lind (1) conducted flight tests on the East River in Cirrus SR-20, SR-22, and Diamond DA airplanes, under varying weather conditions and at various bank angles and speeds and (2) performed calculations for the turn radius. Notably, Defendant's expert used similar methodology to determine similar questions, including (1) the minimum and maximum bank necessary to complete an 180 turn while staying within the confines of the East River and (2) the likelihood of stall in such a maneuver. (See generally Lind Rpt; ESI Rule 26 Rpt.) Accordingly, the Court cannot find Lind's methodology unreliable.

Therefore, the Court finds Lind's expert opinion admissible, and thus DENIES Defendant's motion to strike his testimony.

## E.    Llorente's Testimony is Admissible as Expert Opinion

Plaintiffs seek to offer Llorente's testimony as an expert in aviation accident investigation and reconstruction. Specifically, Plaintiffs state that Llorente will offer his opinion as to the sequence of events that led up to the Aircraft accident as well as his opinion that the accident was due to a

jam of the flight control system rather than pilot error.   (See Pls.' Opp'n Mot. Strike Llorente 1.)

Defendant moves to strike Llorente's testimony, arguing that (1) Llorente's conclusions are unreliable and speculative; (2) Llorente's flight path reconstruction does not support his conclusion that there was a jam in the flight control system; and (3) Llorente is not qualified to offer an expert opinion as to the failure or design of the flight control system.

For substantially the same reasons listed above, the Court disagrees on all counts.  First, the Court finds Llorente's analysis methodology sufficiently reliable to allow him to offer an opinion in this case.  Likewise, while Defendant may disagree with Llorente's flight path reconstruction, the proper avenue for attacking dubious but nonetheless reliable methods is in cross-examination rather than a motion to strike.  Finally, based on his extensive experience, including nineteen years as an aviation accident investigator for the National Transportation Safety Board ("NTSB"), Llorente is qualified to offer an opinion on the flight control system.

Accordingly, the Court DENIES Defendant's Motion to Strike Llorente's expert opinion.

## II.   Summary Judgment Motion

As noted above, under Federal Rule of Civil Procedure 56(c), a court will grant summary judgment only if the evidence

offered establishes that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Summary judgment is appropriate where a plaintiff fails to establish an essential element of his claim, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  Id. at 322-33.

In the instant case, viewing the evidence in the light most favorable to Plaintiffs and resolving all ambiguities and drawing all reasonable inferences against Defendant, Defendant is not entitled to summary judgment.  Defendant claims, among other things, that Plaintiffs have failed to offer admissible expert testimony essential to establish a prima facie strict liability or negligence claim.  However, since the requirements under the Federal Rules of Evidence and, to the extent it is applicable, Daubert have been met, the expert opinions of Hughes, Kumar, Leffe, Lind, and Llorente are admissible and do create genuine issues of material fact regarding whether there was a design or manufacturing defect in the Aircraft, whether the Aircraft was negligently designed, and whether Defendant failed to warn against latent dangers in the Aircraft.

Accordingly, Defendant's Motion for Summary Judgment must be DENIED.

### CONCLUSION

For the reasons set forth above, Defendant's Motions to Strike the Expert Opinions of Hughes, Kumar, Leffe, Lind, and Llorente are DENIED and Defendant's Motion for Summary Judgment is DENIED.

**SO ORDERED:**

BARBARA S. JONES
**UNITED STATES DISTRICT JUDGE**

Dated:     New York, New York
           July 6, 2010

24