UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
MELANIE LIDLE, personal representative   :
on behalf of the Estate of Cory Lidle;   :
MELANIE LIDLE, an individual;            :
CHRISTOPHER LIDLE, a minor, by and       :
through his guardian ad litem, JORDAN    :
FEAGAN; STEPHANIE STANGER,               :
an administrator on behalf of the        : 08 Cv. 1253 (BSJ)(HBP)
Estate of Tyler Stanger; STEPHANIE       :
STANGER, an individual; ASHLUND          : **Opinion and Order**
STANGER, a minor by and through her      :
guardian ad litem, THAYNE STANGER;       :
                                         :
                                         :
                     Plaintiffs,         :
                                         :
          v.                             :
                                         :
CIRRUS DESIGN CORPORATION, et al.        :
                                         :
               Defendants.               :
----------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs in the above-captioned case ("Plaintiffs")
brought wrongful death claims against Cirrus Design Corporation
("Defendant"), arising from an aircraft accident that occurred
in New York on October 11, 2006.  On May 24, 2011, after a five-
week trial, a jury returned a verdict in favor of Defendant
Cirrus Design Corporation.  Final Judgment in the above-
captioned matter was entered on June 6, 2011.

Plaintiffs now move for a new trial pursuant to Rule 59(a)
of the Federal Rules of Civil Procedure.  Plaintiffs advance
four arguments in support of their Rule 59 motion.  First,

Plaintiffs maintain that the Court improperly refused to admit evidence of the "Doremire Incident." (Def.'s Mem. 3). Second, Plaintiffs assert that the Court erred in allowing Patrick Waddick to testify to "expert issues" and by restricting Plaintiffs' cross-examination of Waddick. (See Id. 17). Third, Plaintiffs allege that the Court improperly excluded exhibits referenced in the de bene esse deposition of Arthur Hughes. (See Id. 28). Finally, Plaintiffs assert that the Court failed to properly instruct the jury on negligence and the use of industry standards. (See Id. 35). None of these contentions has merit. For the following reasons, Plaintiffs' motion for a new trial is DENIED.

## BACKGROUND

The instant litigation concerns a wrongful death action arising out of the deaths of Corey Lidle and Tyler Stanger on October 11, 2006, when a single engine Cirrus SR20 piloted by Lidle and Stanger crashed into an apartment building on East 72nd Street on Manhattan's Upper East Side. On February 22, 2007, Plaintiffs filed a Complaint in Superior Court in California.[1]

---

[1] In their Complaint, Plaintiffs alleged: (1) that the Aircraft's flight control system failed as a result of a design defect in the rudder-aileron interconnect ("RAI"); (2) that the flight control system in the Aircraft was misrigged due to a manufacturing defect, causing the RAI to lock up and the pilots to lose control; (3) that the RAI system in the Aircraft was negligently designed; and (4) that Defendant failed to warn Lidle and Stanger of latent dangers resulting from foreseeable uses of the Aircraft.

Defendant removed the above-captioned case to the United States
District Court for the Central District of California.  The case
was subsequently transferred to the Southern District of New
York on February 7, 2008.  After significant discovery,
extensive motion practice, and a five-week jury trial, a jury
found in favor of Defendant Cirrus Design Corporation on all
counts.

## LEGAL STANDARD

A district court may grant a new trial "in an action in
which there has been a trial by jury, for any of the reasons for
which new trials have heretofore been granted in actions at law
in the courts of the United States."  Fed. R. Civ. P. 59(a).
The Second Circuit has interpreted this standard to permit the
granting of a new trial when a district court concludes that the
jury reached a "seriously erroneous result" or that the "verdict
is a miscarriage of justice."  Manley v. AmBase Corp., 337 F.3d
237, 245 (2d Cir. 2003).  A new trial may be warranted if
"substantial errors were made in admitting or excluding
evidence, or in charging the jury, or if misconduct by counsel
during the course of the trial causes unfair prejudice to the
moving party."  In re Vivendi Universal, S.A. Sec. Litig., 765
F. Supp. 2d 512, 573 (S.D.N.Y. 2011).  A Court may weigh the
evidence for itself, and a motion for a new trial pursuant to

3

Rule 59 may be granted "even when there is evidence to support the jury's verdict." AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 456 (2d Cir. 2009) (internal quotation marks and citation omitted).

### DISCUSSION

### I. The Doremire Incident

Plaintiffs assert that the Court erred by granting Defendant's motion in limine to exclude all evidence of the "Doremire Incident." (Pl.'s Mem. at 3). Plaintiffs further contend that, as the trial progressed, facts were presented that made it clear that the Doremire incident was "virtually identical" to Lidle/Stanger incident and therefore should have been admitted. (Id.). As such, Plaintiffs contend that the Court's initial ruling and failure to reconsider that ruling were in error and constitute a miscarriage of justice that merits a new trial.

By Order dated April 20, 2011, the Court granted Defendant's Motion in limine to exclude all evidence of the "Doremire Incident." This ruling was issued after full briefing of the issue, extensive argument at two hearings, and a thorough examination of the evidence relating to the Doremire Incident. In a phone conference held on April 20, 2011, the Court discussed the evidence submitted by Plaintiffs in support of

4

their claim that evidence of the Doremire Incident should be admitted because it was substantially similar to the alleged defect in the instant action.  The Court found that the Doremire Incident was not substantially similar to the case at bar, and, therefore, the evidence of the Doremire Incident must be precluded.  The Court also determined that the evidence was inadmissible pursuant to Rule 403.

Plaintiffs do not contend that the Court applied the incorrect legal standard.  Both parties agree that evidence of a prior accident may only be admitted if the proponent shows that the prior accident occurred under "substantially similar" conditions to the case at bar.  See Melini v. 71st Lexington Corp., No. 07 Cv. 701(JCF), 2009 WL 1905032, at *1 (S.D.N.Y. July 2, 2009).  Whether the accident occurred under "substantially similar" conditions necessarily "depends upon the underlying theory of the case, and is defined by the particular defect at issue."  Guild v. Gen. Motors Corp, 53 F. Supp. 2d 363, 367 (W.D.N.Y. 1999) (internal quotation marks and citations omitted).  Thus, Plaintiffs bore the burden of establishing that Doremire's alleged flight control problem was the result of the same defect they posited caused the Lidle/Stanger accident.

Plaintiffs' underlying theory of the case was that "the accident was caused by the rudder aileron interconnect Adel clamp crossing over and becoming locked on the aileron bungee

5

clamp." (Pl.'s Opp'n Summ. J. at 16). Specifically, Plaintiffs
argued that "[t]he combination of moving the aileron cable
forward and the RAI backwards (which is a cross control
maneuver) created a situation where the Adel clamp on the RAI
crossed over the rear aileron bungee clamp." (Id. 17-18).
Throughout trial, Plaintiffs argued that once a jam of the RAI
occurred, this caused other parts of the system to bend, which
then lead to a progressive failure of the flight control system
in the Lidle/Stanger aircraft.

    In opposition to Defendant's Motion in limine to exclude
evidence of the Doremire Incident, Plaintiffs submitted evidence
indicating that, on March 27, 2006, Bridgette Doremire
experienced a problem with her flight controls while conducting
a training flight in a Cirrus SR20, tail number N64CD, with her
student, Todd Olsen. The evidence presented to the Court
included Doremire's deposition testimony, Doremire's NASA report
composed shortly after the incident, a letter Doremire wrote to
the NTSB on August 8, 2008, the deposition testimony of John
Bell, Doremire's mechanic who inspected N264CD, a letter from
Bell to the NTSB dated April 11, 2006, and an undated photograph
that purported to be the N264CD trim cartridge showing chatter
marks.[2]

---

[2] In their Motion for a new trial, Plaintiffs submit two new pieces of
evidence. (Pl.'s Ex. E & F). It is clearly inappropriate to rely on these
documents after the trial has concluded. Nonetheless, upon review of the

When issuing its ruling, the Court reviewed all of this
evidence and determined that Plaintiffs did not meet their
burden.  The Court began the conference by noting that
"[s]ubstantial similarity depends—and . . . this is obvious—on
the underlying theory of the case and the particular defect at
issue.  [A] party cannot define a defect so broadly that all
products are, by definition substantially similar.  And, talking
about this case, merely alleging some malfunction of the flight
controls is simply not sufficient."  (Apr. 20 Tr. 2).  The Court
then proceeded to discuss, in detail, why the Court found the
evidence cited by the Plaintiffs unpersuasive.  The Court noted
that while Doremire's description of the incident during her
deposition indicated that there was some problem with the flight
control system, it provided minimal probative evidence that
these problems were caused by the same defect as alleged in the
Lidle/Stanger accident.[3]  (Apr. 20 Tr. 3).  The Court also noted

---

documents, they provide little probative evidence that the Doremire Incident
was substantially similar to the Lidle/Stanger Incident.  Both documents
appear to relate to an inspection of the Doremire aircraft on August 16,
2007, approximately 17 months after the Doremire Incident.  In light of the
lack of foundation of these exhibits and temporal distance from the actual
incident, the Court finds that these documents have little probative value
and do not change the Court's analysis of substantial similarity.
[3] According to her Deposition, during their final flight pattern of the
lesson, Doremire experienced a "hard lock in the control movement, like I hit
a stop."  (Doremire Dep. 71:2-3).  Doremire stated that after she took
control of the aircraft, she "hit something hard at approximately halfway
between full right aileron and centered aileron."  (Id. at 74:21-75:1).
Once she was able to unlock the controls, Doremire stated only that "the
controls did not respond properly.  It felt like there was increased pressure
and the centering of the ailerons was off." (Id. at 79:14-20).  Doremire was
ultimately able to regain aileron control by applying full left aileron and
fully depressing the left rudder pedal.  (Id. at 79:09-11).

that Doremire's description of the incident in her NASA report
and NTSB letter asserted general flight control problems but
never alleged a problem with the RAI.[4] (Apr. 20 Tr. 4-5). The
Court stated that the Bell Letter also failed to provide
probative evidence that the Doremire incident was caused by an
RAI lockup. Rather, the Court explained that the Bell Letter
and Bell's deposition testimony also provided little probative
evidence of a lockup of the RAI. (Apr. 20 Tr. 6). The Court
also reviewed other evidence, including a photo belatedly
submitted by Plaintiffs after it was alluded to in their papers
but not attached as an exhibit, and the "Borden Memo" that was
subsequently ruled inadmissible. The Court determined that
Plaintiffs submitted "little reliable evidence that the rudder-
aileron interconnect Adel clamp cross[ed] over and [became]
locked on the aileron bungee clamp caus[ing] the malfunction in
the Doremire incident."[5]   (Apr. 20 Tr. 11). The Court concluded
that "there are just too few established facts about the
Doremire incident from which a comparison between the two
accidents can be made." (Apr. 20 Tr. At 11). Thus, the Court
determined that Plaintiffs had not satisfied the evidentiary

---

[4] After the flight, Doremire reported the in-flight control problem through
NASA's Aviation Safety Reporting System and later composed a letter to the
National Transportation Safety Board.  In both reports Doremire notes
difficulty in moving the flight controls but does not mention any problems
with the RAI.
[5] Indeed, after its extensive review of the evidence, the Court noted that the
evidence submitted by Plaintiffs indicated that it was just as likely that
the Doremire Incident was caused by a sticking of the trim cartridge as a
lockup of the RAI.  (Apr. 20 Tr. 11).

threshold for admissibility of the other incident and granted Defendant's motion to exclude the Doremire incident.[6]

In addition, the Court went on to analyze the evidence of the Doremire Incident under Rule 403. The Court determined that "the minimal probative value of [the evidence of the Doremire Incident] . . . is outweighed by the fact that it would create an unfair prejudice to the defendant in this case and would confuse the jury and delay the trial, which of course would also cause an undue expenditure of time in the trial on a collateral issue." (Apr. 20 Tr. 11-12). If evidence of the Doremire Incident were permitted, numerous witnesses would necessarily be called by both parties to establish what happened during that incident, prolonging an already complex and lengthy trial. Plaintiffs' Motion for a New Trial does not address this independent basis for excluding evidence of the Doremire Incident. See, e.g. Nachtseim v. Beech Aircraft Corp., 847 F.2d 1261, 1269 (7th Cir. 1988) ("[T]he costs-in terms of time, distraction and, possibly, prejudice-resulting from such evidence also may weigh against admissibility."). Thus, the Court finds this argument for a new trial unpersuasive.

---

[6] The Court also found Plaintiffs' argument that the Doremire incident should have been introduced for purposes of showing that Cirrus was on notice of the potential defective condition unavailing. None of the communications by Doremire or Bell to the NTSB, NASA or Cirrus indicated any problem with the RAI and could not have put Cirrus on notice of the defect alleged in the Lidle/Stanger litigation. (Apr. 20 Tr. 9-10).

Plaintiffs also argue that evidence introduced at trial revealed that the Doremire Incident was virtually identical to the case at bar and evidence of it should have been admitted. Specifically, Plaintiffs contend that evidence regarding "trim cartridge bend scrape issues" and "lockup with less than full cross control" merited reconsideration of the Court's ruling. The Court disagrees.

At trial, Plaintiffs presented evidence of the scraping and bending of the roll trim cartridge in the Lidle/Stanger aircraft through their expert, Abdon Llorente.  Plaintiffs fail to point to any new evidence that would affect the Court's substantial similarity analysis.  Though Plaintiffs' experts opined on the presence of scrape marks and bending of the trim cartridge in the Lidle/Stanger aircraft, none of Plaintiffs' experts ever made a comparison of the marks on the Lidle/Stanger trim cartridge with those on the Doremire trim cartridge.[7]  (Apr. 20 Tr. 7).  Though none of Plaintiffs' experts compared the Doremire and Lidle/Stanger trim cartridges, during the April 20, 2011, phone conference, the Court reviewed the undated

---

[7] It is of note that Plaintiffs never formally asked the Court to reconsider its ruling excluding the Doremire Incident.  During trial, Plaintiffs requested that they be allowed to question one of their experts, Abdon Llorente, about marks depicted in a photograph of the Doremire trim cartridge and compare them to the marks on the Lidle trim cartridge.  Plaintiffs represented that Llorente had previously opined on the marks on the Doremire trim cartridge shaft.  The Court requested that Plaintiffs indicate where he had done so.  Plaintiffs never submitted anything that indicated Llorente provided an opinion or even observed the chatter marks on the trim cartridge shaft of the Doremire aircraft. (Tr. 826-28).  Thus, the Court had no reason to reconsider its previous ruling.

10

photograph that purported to show scrape marks on the Doremire
aircraft.  The Court found that the photograph lacked foundation
and had little probative value.  (Apr. 20 Tr. 6-7).  Similarly,
though Plaintiffs introduced evidence that a lockup could occur
at less than full cross control, it is unclear how this supports
Plaintiffs' contention that the Doremire Incident occurred under
substantially similar circumstances as the Lidle/Stanger
accident.

    The Court's ruling thus properly applied the legal standard
to the facts at hand.  The Court finds Plaintiffs' renewed
arguments of substantial similarity unavailing for the same
reasons that were stated on the record during the April 20, 2011
conference.  Plaintiffs failed to show that the Doremire
Incident was caused by the same purported defect in the aircraft
that was advanced in the Lidle/Stanger litigation—merely
alleging some problem with the flight control systems was and is
not enough.  The Court finds that nothing introduced at trial,
or included in Plaintiffs' post-trial motion, merits
reconsideration of the ruling.  As such, Plaintiffs have not met
their burden of showing that substantial errors were made in the
exclusion of evidence so as to cause an unfair trial.  See
Pappas v. Middle Earth Condo. Ass'n, 963 F.2d 534, 540 (2d Cir.
1992).

## II.  Waddick Testimony

Plaintiffs contend that the Court erred in allowing
Defendant's witness, Patrick Waddick, to testify to expert
issues though he was never identified as an expert.  Plaintiffs
also contend that the Court erred by restricting Plaintiffs'
cross-examination of Waddick.

Patrick Waddick is the Chief Operating Officer of Cirrus
Design Corporation.  Waddick was Executive Vice President of
Engineering at Cirrus during the design of the Cirrus SR20 and
SR22.  (Tr. 3292-93).  Throughout the presentation of
Plaintiffs' case, Plaintiffs criticized the design process that
led to the inclusion of the RAI in the SR20.  Defendants called
Waddick to explain the Cirrus design process.

Waddick was not called as an expert and did not give expert
opinion testimony, he simply testified about what happened
during the design process based on his first-hand knowledge or
observations.  For example, Waddick testified about the
aircraft's compliance with FAA certification requirements and
specifications.  This testimony concerned facts relevant to the
central issues in the case, namely the Cirrus design process,
about which Waddick had direct knowledge based upon his personal
involvement.   See M.O.C.H.A. Soc., Inc. v. City of Buffalo, 2008
WL 4412093, 2008 WL 4412093, at *2 (W.D.N.Y. Sept. 23, 2008).

This constituted proper, non-expert testimony that provided relevant and helpful background information.

Further, Plaintiffs invited, and did not move to strike, some of the testimony that they now claim is improper expert testimony. Notably, Waddick testified that, "We have a very safe plane" only in response to Plaintiffs' counsel's question: "And why did you stop testing the matrix? Why wouldn't you want to make a safe plane, sir?" (Tr. 3399). Waddick's statement was not objected to. Similarly, Waddick did not testify about the Leesburg, VA Incident on direct examination. Rather, his opinion that the Leesburg aircraft was misrigged in the field was only elicited on cross-examination. (Tr. 3521). These questions were outside of the scope of Waddick's direct examination and the answers were not objected to at the time. Plaintiffs have thus waived their right to seek a new trial on the basis of such testimony.

Plaintiffs also take issue with limits placed by the Court on the length and scope of Waddick's cross-examination. Plaintiffs argue that the Court erroneously prohibited Plaintiffs from impeaching Waddick with certain exhibits and placed unreasonable time restrictions on the cross-examination. (Def. Mem. 21-23). These contentions are also without merit.

"[T]here is a long line of cases making clear the authority of district judges to impose reasonable time limitations on

13

trials," and affording a district court judge "extensive discretion in controlling the scope and length of cross examination." Friedline v. N.Y. City Dep't of Educ., No. 06 Civ. 1836, 2009 WL 37828, at *2 (S.D.N.Y. Jan. 5, 2009) (internal quotation marks and citations omitted). Further, "in order to prevail on a claim that a time limit was too short, a party must have come forward with an offer of proof showing how its presentation would be curtailed by [the time limitation] and must demonstrate prejudice." Evans v. Port Auth. Of N.Y. & N.J., 246 F. Supp. 2d 343, 351 & n.49 (S.D.N.Y. 2003). Plaintiffs have not met this burden.

There were no arbitrary or unfair time limits placed on Plaintiffs' cross-examination of Waddick. Waddick was called by the Defendant only after portions of his deposition were introduced as part of Plaintiffs' case-in-chief.[8] Plaintiffs' counsel began his cross-examination of Waddick at the end of the day on May 19th, during the fourth week of trial. After the Jury was excused that day, the Court asked how long the Plaintiffs anticipated cross-examination would take. Plaintiffs' Counsel replied, "About an hour and a half." (Tr. 3422). The following

---

[8] Prior to Waddick being called by Defendant, Plaintiffs elected to introduce excerpts from Waddick's deposition as part of their case-in-chief, although he was made available to them to testify in person. This was allowed over Defendants' objection. Throughout the course of Waddick's cross-examination, Cirrus raised numerous objections that Plaintiff was seeking a second opportunity for a direct examination as Plaintiffs' questions went beyond the scope of Defendant's direct examination. (See Tr. 3489-90). The Court concurred. (Tr. 3492).

day, the Court noted that Plaintiffs' cross-examination was
straying well beyond the scope of the direct examination, in
particular by focusing on certain tests performed by Cirrus
after the crash of a test flight in 1999 and other evidence that
had already been discussed by Plaintiffs' experts. (Tr. 3491-
92). The Court stated, "this should have been used in cross-
designations in your own case. . . . [T]here is a reason why
there is a rule that says you can't go beyond the scope of
direct in cross and it is precisely this reason . . . ." (Tr.
3492). Thus, Plaintiffs were permitted to proceed, over
Defendant's objection. After discussing the documents
Plaintiffs' were going to use during the rest of their cross-
examination, the Court instructed: "Mr. Macaluso, you have an
hour. You told me an hour and a half yesterday, you have had
more than an hour and a half already." (Tr. 3502). After more
than an hour of cross examination on the post-1999 test flight
crash tests, the Court called the cross-examination to a close.
(Tr. 3550-55).

     After a review of the record, the Court determines that
Plaintiffs failed to identify any probative, non-cumulative
evidence that Plaintiffs were prevented by the time limit from
presenting. The imposition, extension, and ultimate adherence
to the time limit had no prejudicial effect on Plaintiffs'
ability to present their case.

Finally, Plaintiffs argue that Court improperly impeded their cross-examination by not allowing them to use for impeachment certain documents, including the Cirrus Service Bulletin, the Airworthiness Directive, and the June 1, 2007 letter from Bradley Miller of Cirrus Design to Todd Gunther of the NTSB, that were excluded as evidence of subsequent remedial measures.  Plaintiffs contend that these documents should have been allowed for the purpose of impeaching Waddick's testimony, elicited on cross-examination, that the SR20 was a "very safe airplane" and his statement on direct that "[Cirrus was] really happy with the way the plane flew.  It had very good characteristics."  (Tr. 3999:8-12; 3343:9-10; Pl.'s Mem. at 22).

Federal Rule Evidence 407 provides that it "does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as ... impeachment."  However, in order to prevent the exception from swallowing the rule, such "evidence offered for impeachment must contradict the witness's testimony directly."  Complaint of Consol. Coal Co., 123 F.3d 126, 136 (3rd. Cir. 1997); see also Harrison v. Sears, Roebuck & Co., 981 F.2d 25, 31 (1st Cir. 1992) (noting that impeachment exception generally requires a "nexus between the statement sought to be impeached and the remedial measure").  In addition, even if the evidence could arguably fit within the Rule 407

impeachment exception, a Court must also engage in normal Rule
403 balancing. Id. at 32.

At trial, the Court found that nothing in Waddick's
testimony was inconsistent with these documents and that these
documents did not fall within the impeachment exception to the
rule forbidding the introduction of subsequent remedial
measures. For example, on May 20, the Court asked Plaintiffs
counsel to provide a citation to the transcript of Waddick's
testimony that supported Plaintiffs' contention that the June 1,
2007 Letter was proper impeachment. (Tr. 3440-41). After
reviewing the entirety of Waddick's testimony as well as the
letter at issue, the Court held that, "There is nothing
inconsistent between his direct testimony and what is in this
letter. So I am not permitting any impeachment on it." (Tr.
3503:6-8). After further review of the record, the Court found
that Waddick's testimony on cross-examination that the SR20 was
a "very safe airplane" and his statement on direct that "Cirrus
was "really happy with the way the plane flew" and that the SR20
"had very good characteristics" was not directly contradicted by
evidence of subsequent remedial measures. Such evidence of
subsequent remedial measures was offered not to impeach
Waddick's general assertions, but rather to prove Cirrus's
culpability. This is not permitted by the Rules of Evidence.

17

This evidence was properly excluded under both Rule 407 and Rule 403. Plaintiffs' argument therefore fails.

### III. Hughes Exhibits

Prior to trial, the Court granted leave for Hughes' deposition to taken de bene esse because Hughes was unable to travel to New York for medical reasons.  Plaintiffs were permitted to play certain portions of the de bene esse deposition of Hughes to the jury.  The Court issued an evidentiary ruling on May 21, 2011, excluding certain exhibits to the de bene esse deposition of Hughes.  The Court excluded Exhibit 29.1, maintenance manual changes from the Service Bulletin; Exhibit 252, the NTSB report of March 23, 1999 concerning the test flight crash; and Exhibit 255, the General Aviation Advisory Circular that was generated by the FAA on April 25, 2000 following the 1999 test plane crash.  By Order dated May 22, 2011, the Court denied Plaintiffs' motion for reconsideration of the exclusion of the Advisory Circular on the basis that "Hughes simply does not offer sufficient foundation for the document nor does he testify with sufficient specificity as to its contents."  (May 22, 2011 Order, ECF Doc. 447).

Plaintiffs argue that the Court improperly excluded these exhibits to the de bene esse deposition of Plaintiffs' expert Arthur Hughes.  Plaintiffs allege that they should have been

admitted because the "documents were considered and relied upon
by Hughes while forming the basis for his opinions in the case.
They were contained within his file, commented upon during his
first deposition, and testified to during his de bene esse
deposition." (Def. Mem. At 30). Plaintiffs argue that the
exclusion of these exhibits constitutes a manifest injustice
that would have altered the outcome of the trial.

Rule 703 of the Federal Rules of Evidence provides that,
"[f]acts or data that are otherwise inadmissible shall not be
disclosed to the jury by the proponent of the opinion ... unless
the court determines that their probative value in assisting the
jury to evaluate the expert's opinion substantially outweighs
their prejudicial effect." Fed. R. Evid. 703. An expert
witness can testify to his or her opinions, arrived at by
applying the witness's expertise to otherwise inadmissible
evidence, because "in that limited instance, the evidence is not
being presented for the truth of the matter asserted." United
States v. Lombardozzi, 491 F.3d 61, 72 (2d Cir. 2007).
Thus, an expert witness's mere reliance upon facts or data in
forming the opinion that the witness will present at a trial
does not render the facts or data admissible, as substantive
evidence, if the facts or data relied upon by the witness would
otherwise be inadmissible under the Federal Rules of Evidence.

19

Throughout the trial, the Court expressed concern about there being sufficient foundations for the admissibility of certain of Plaintiffs' exhibits. (See Tr. 3179) ("[W]e are going to have a lot of trouble if we don't establish on the record what everyone's exhibits are. Now, I don't know which exhibits the plaintiffs are offering that go with the witnesses that they provide in the deposition.). During a hearing on May 21, the Court held oral argument concerning the admissibility of the documents at issue. The Court requested and received copies of the documents and citations to Hughes's de bene esse deposition testimony where he discussed the documents. (Tr. 3738-39). After conducting a review of the materials, the Court held that the de bene esse deposition testimony of Hughes failed to provide a proper foundation for the admissibility of the documents. The Court determined that, from its review of the videotaped deposition, it was impossible to tell what documents were being presented to Hughes and what portions of the documents he was discussing. The Court held that passing references to documents in Mr. Hughes' testimony alone could not form a basis for admitting into evidence the documents themselves. The Court determined that because Hughes's testimony failed to provide the proper foundation for these documents, they were not received as substantive evidence.

In addition, Plaintiffs were not prejudiced by the exclusion of these documents. These documents pertain to Cirrus's testing and design process of the SR20. This topic was explored at length by Plaintiffs' experts during their case-in-chief. It is of note that Plaintiffs did not try to independently introduce these documents during their case-in-chief. Rather, they sought to have them admitted as either exhibits relied upon by Hughes in his taped deposition or for use during the Waddick cross-examination. However, as discussed above, these documents were not proper for impeachment of Waddick and were not given a sufficient foundation by the taped Hughes deposition. Thus, Plaintiffs' argument fails.

## IV. Jury Instructions

Plaintiffs argue that the Court erred by failing to give a separate jury instruction for both Products Liability and Negligence. Plaintiffs claim that, because both strict products liability and negligence were pled in this case, the Court was in error by solely instructing the jury on strict products liability.

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Anderson v. Branen, 17 F.3d 552, 556 (2d Cir.

1994). A court must consider the jury instructions as a whole
to determine "if the charge actually given was correct and
sufficiently covered the essential issues." Carvel Corp. v.
Diversified Mgmt. Grp., Inc., 930 F.2d 228, 231 (2d Cir. 1991).
A new trial will only be required if, "considering the
instruction as a whole, the cited errors were not harmless but
in fact prejudiced the objecting party." D'Cunha v.
Genovese/Eckerd Corp., 415 Fed. Appx. 275, 278 (2d Cir. 2011).
(citation omitted).

    The Court's decision not to include a negligence question
on the verdict sheet was not error and did not prejudice the
Plaintiffs. Under New York law and the particular facts of the
case, the Court determined that a failure to prove a product
defect would also be fatal to Plaintiffs' negligence claim.
Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 86 (2d Cir. 2006)
("Both claims entail a showing that a product defect caused the
injury; but to show negligence, the plaintiff must also prove
that the injury caused by the defect could have been reasonably
foreseen by the manufacturer . . . .) (citation omitted). As
such, after a long and complex trial, the Court concluded that a
separate negligence question need not be included on the verdict
form. Indeed, the Plaintiffs agreed and the absence of a
separate negligence question was not objected to by Plaintiffs

during the charge conference or later during the charge itself.[9]

Further, Plaintiffs were not prejudiced by the verdict form

because the Jury concluded that the SR20 was not defective and,

under New York law, negligence requires the showing of a product

defect.  Id.  Thus, it made no difference that the negligence

question was not included on the verdict form.  Plaintiffs'

Motion fails because the Court informed the jury of the correct

standard and Plaintiffs have failed to demonstrate that they

were prejudiced by the jury instructions.

Plaintiffs also allege that the Court erred by failing to

give a special instruction on the nature of industry standards.

Plaintiffs argue that because Patrick Waddick was permitted to

testify regarding the Part 23 certification process, an

instruction should have been given informing the jury that

compliance with an industry standard is not conclusive evidence

---

[9] The Court did instruct the Jury on negligence but did not include a separate
question concerning negligence on the verdict form given to the Jury.  (Tr.
4093-94).  The Court informed the parties that it "agree[d] with defendants
that there should be no separate section on the verdict form relating to
negligence.  We're going to have the jury decide product liability and so you
will not see negligence questions on the verdict form."  (Tr. 3859-60).  In
response, Plaintiffs' counsel stated, "my only concern is defendant not
trying to avail themselves of any appellate review over the fact that the
jury may not—that you can't figure out which one of the causes of actions the
jury agreed with or not.  That's just the only concern there."  (Tr. 3860).
Thus, Plaintiffs' concern would only apply if a verdict were rendered for the
Plaintiffs.  The following day, the Court proceeded to instruct the Jury on
negligence as well as products liability.  After delivering the negligence
instruction, the Court asked to see counsel at side bar.  (Tr. 4094-99).  At
side bar, the parties discussed what, if anything, the jury should be told
about the absence of a negligence question on the verdict form.  (Id.).  At
no time did Plaintiffs object to the absence of a separate question in the
verdict form.

that the design of the SR20 was safe.  Plaintiffs' argument is
unavailing.

    In the instant matter, the Court determined that the jury
did not need instruction on compliance with industry standards
given the arguments advanced by the parties at trial.  While it
is clear that a defendant cannot rely on compliance with
industry standards as an absolute defense, that was not argued
in this case.  Waddick's testimony was not offered to show that
the SR20 complied with industry standards and was therefore
safe.  Rather, Waddick's testimony provided context to
Plaintiffs' repeated critiques of the design process that led to
the inclusion of an RAI in the SR20.  (See Tr. 3303-07)
(explaining design process).  Cirrus never attempted to argue,
either through its witnesses or to the jury, that it was not
liable because it relied upon industry standards.  Thus, the
Court determined that no charge on industry standards was
necessary.

    The cases cited-to by Plaintiffs are unavailing.  In each
of those cases, compliance with standards was either advanced as
a defense by the Defendant or non-compliance was advanced by the
Plaintiff as a basis for liability.  See, e.g., Sawyer v. Dreis
& Krump Mfg. Co., 493 N.E.2d 920, 925 (N.Y. 1986) (requiring
instruction that standards were not conclusive evidence of
negligence where standards were introduced and argued as

                                24

evidence of custom and usage in the industry).  In this trial,
compliance with industry standards was not advanced as a defense
against liability or argued as a basis for liability.  As such,
the Court determined that the inclusion of an additional
instruction was not necessary and would have had the potential
to confuse the jury at the end of a long and complex trial.  The
Court finds Plaintiffs' renewed arguments unpersuasive and
declines to reconsider its ruling.

## CONCLUSION

In light of the considerable evidence presented by both
parties at trial regarding the design of the SR20 in general,
and the Lidle/Stanger aircraft in particular, the Court does not
conclude that the jury reached a seriously erroneous result,
that the jury's verdict was against the weight of the evidence,
or that the trial was unfair to Plaintiffs.  For all of the
foregoing reasons, defendant's motion for post-verdict relief is
DENIED.

**SO ORDERED:**

_BARBARA S. JONES_
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
          November 7, 2011